******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ROBERT GOODY, ADMINISTRATOR (ESTATE OF RICHARD GOODY) *v.* MICHAEL J. BEDARD ET AL.
## (AC 42259)

Alvord, Elgo and Devlin, Js.

*Syllabus*

The plaintiff administrator of the estate of the decedent sought to recover damages from the defendant S for negligence in connection with the drug overdose and subsequent death of the decedent at her residence. He alleged that, on the day that the decedent overdosed, B, who lived with S at her residence, invited the decedent to consume drugs at the residence where the decedent became unresponsive and unconscious, that the decedent thereafter died and that the decedent's injuries and death were caused by S's negligence in that she knew or should have known that drugs were being used on the premises and she failed, inter alia, to take any action to remove the drugs from the premises. S filed a motion for summary judgment and an affidavit in support thereof in which she averred that she did not invite the decedent to her residence and B did not ask her permission to have him there, that she was not present at her residence when the decedent was there and that she did not learn that he had been there until the day after he had overdosed. Thereafter, the trial court granted, over S's objection, two motions filed by the plaintiff for an extension of time to respond to S's motion for summary judgment. Nearly two weeks after the second deadline date and four days before the rescheduled date for oral argument on S's motion for summary judgment, the plaintiff filed a third motion for an extension of time, which the court did not act on. Thereafter, following a hearing, the trial court granted S's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Held*:

1. The plaintiff's claim that the trial court abused its discretion in effectively denying his third motion for an extension of time to respond to S's motion for summary judgment because additional time for discovery was needed to obtain B's medical records and to perform depositions of other witnesses was unavailing; the plaintiff already had been granted two prior motions for an extension of time and there were no affidavits before the trial court articulating with specificity what additional discovery might justify a further continuance of the hearing and, potentially, the trial, the third motion for an extension of time was filed just four days before the rescheduled hearing and there was an absence of information verified by affidavit detailing precisely what facts were within the exclusive knowledge of the person to be deposed.

2. The plaintiff could not prevail on his claim that the trial court improperly granted S's motion for summary judgment, which was based on his assertion that that court erred in determining that there was no disputed issue of material fact that S did not owe a duty of care to the decedent: no genuine issue of material fact existed as to whether S was at her residence when the decedent was there, as the only evidence before the court on that issue was S's affidavit in which she averred that she was not present when he was there; moreover, contrary to the plaintiff's contention that S had a duty to aid and to protect the decedent because she knew or should have known that B possessed drugs and alcohol in her residence and that they would cause the decedent harm, on the basis of the evidence presented, this court could not conclude that an ordinary person in S's position would anticipate that the decedent would ingest drugs in her residence and suffer serious physical injuries that would result in his death, and the plaintiff did not allege any recognized special relationship of custody or control between the decedent and S that would warrant the imposition of a duty; furthermore, the plaintiff's assertion that S owed the decedent a duty of care under the theory of premises liability was without merit, as he failed to provide any case law to support his contention that B's possession of drugs and alcohol constituted a defect on S's premises.

Argued February 18—officially released October 6, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New London, where the named defendant was defaulted for failure to appear; thereafter, the plaintiff filed a motion for an extension of time; subsequently, the court, *Swienton, J.*, granted the motion for summary judgment filed by the defendant Flori Schmoegner and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Peter G. Billings*, for the appellant (plaintiff).

*Joseph M. Busher, Jr.*, for the appellee (defendant Flori Schmoegner).

*Opinion*

ELGO, J. The plaintiff, Robert Goody, administrator of the estate of Richard Goody (decedent), appeals from the summary judgment rendered by the trial court in favor of the defendant Flori Schmoegner.[1] On appeal, the plaintiff claims that the court erred by (1) effectively denying his motion for an extension of time to conduct additional discovery when it rendered summary judgment, and (2) determining that the defendant did not owe a duty of care to the decedent in rendering summary judgment. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to our resolution of this appeal. "The defendant . . . owned the residence located at 8 Illinois Court, Oakdale . . . where she lived with . . . Bedard, her 'husband, boyfriend and/or friend.' . . . On February 9, 2016, the [decedent] . . . was invited to the premises in order to consume drugs. . . . Around 7 p.m. on that day, the [decedent] became unresponsive and could not breathe. Bedard waited until 8:32 p.m. to seek medical assistance, and, when the emergency medical personnel arrived at the Illinois Court premises, the [decedent] was unconscious and unresponsive. He was transported to the emergency room at Backus Hospital, where he received Narcan, was placed on life support and received additional medical treatment. The [decedent] was then transferred to Yale New Haven Hospital where he received critical care until his death on February 11, 2016. . . .

"In count four [of his complaint] against the defendant . . . the plaintiff alleges that the injuries and death of [the decedent] were caused by the negligence of [the defendant] in that she allowed Bedard to live on the premises, she knew or should have known that drugs were being used on the premises and failed to take any action to remove the drugs from the premises. In addition, she failed to take any action to save the [decedent], failed to warn or protect his safety, failed to provide emergency medical personnel with information regarding the decedent's activities, and failed to exercise control over the premises.

"The defendant . . . has provided an affidavit in support of her motion for summary judgment which states that she did not invite [the decedent] to her residence, that Bedard did not ask permission to have [the decedent] to her home, that she was not at home at any time [the decedent] was at the premises, and [that] she did not learn of his presence at her home until February 10, 2016. She was at work while [the decedent] was at her premises.

"On February 21, 2018, the defendant . . . filed her motion for summary judgment. On June 18, 2018, the

plaintiff filed an 'initial' memorandum in opposition to the defendant's motion for summary judgment. He has indicated that he filed for an extension of time in order to respond to the motion for summary judgment, which motion was pending before the court. The court docket indicates that he filed a motion for [an] extension of time on March 20, 2018, seeking until June 1, 2018, to respond to the motion for summary judgment, which motion for [an] extension of time was granted over objection. . . . On June 14, 2018, the plaintiff filed a second motion for [an] extension of time, seeking until September 1, 2018, to respond, which motion was granted on June 18, 2018. . . .

"The plaintiff filed his 'initial' response on June 18, 2018. On September 13, 2018, a third motion for [an] extension of time to respond was filed by the plaintiff, the defendant filed an objection to the motion, and the court heard oral argument on the motion for summary judgment on September 17, 2018." (Citations omitted.) On October 3, 2018, the trial court granted the defendant's motion for summary judgment and rendered summary judgment in her favor. The plaintiff subsequently filed this appeal.

I

The plaintiff first claims that the court improperly denied his motion for an extension of time to respond to the motion for summary judgment. Specifically, he argues that the court abused its discretion because he had "demonstrated a compelling reason why the additional time was needed to conduct discovery and the steps [his] counsel had already taken for that purpose." We disagree.

The following additional facts are relevant to our resolution of this claim. The plaintiff submitted, and the court accepted, a scheduling order in which all dispositive motions were to be filed by March 15, 2018. Trial was scheduled for November 6, 2018. The defendant filed her motion for summary judgment on February 21, 2018. On March 20, 2018, the plaintiff filed a motion for an extension of time—to June 1, 2018—to respond to the defendant's motion for summary judgment. Over objection by the defendant, the court granted the plaintiff's motion. On June 14, 2018, two weeks after his requested deadline date, the plaintiff filed a second motion for an extension of time requesting that the deadline to respond again be extended, to September 1, 2018. That motion also was granted by the court. On June 18, 2018, the plaintiff filed an initial response to the defendant's motion for summary judgment. On September 13, 2018, nearly two weeks after his second deadline date and four days before the rescheduled date for oral argument on the motion for summary judgment, the plaintiff filed his third motion for an extension of time. The defendant filed an objection. Oral argument on the motion for

summary judgment went forward as scheduled on September 17, 2018, at which time the plaintiff stated that he needed more time to conduct discovery. The trial court issued its memorandum of decision on October 3, 2018, granting the defendant's motion for summary judgment and did not act on the plaintiff's third motion for an extension of time.

We begin by setting forth the applicable standard of review. Practice Book § 17-45 provides in relevant part: "(a) A motion for summary judgment shall be supported by appropriate documents, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and other supporting documents. (b) Unless otherwise ordered by the judicial authority, any adverse party shall file and serve a response to the motion for summary judgment within forty-five days of the filing of the motion, including opposing affidavits and other available documentary evidence. . . ." Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." "A trial court's adjudication of a motion for a continuance pursuant to Practice Book § 17-47 is reviewed for an abuse of discretion." *Chase Home Finance, LLC* v. *Scroggin*, 194 Conn. App. 843, 860, 222 A.3d 1025 (2019). "Under the abuse of discretion standard for review, [an appellate court] will make every reasonable presumption in favor of upholding the trial court's ruling and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 701–702, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010).

On appeal, the plaintiff argues that the court abused its discretion in denying his third motion for an extension of time because additional time was needed to obtain documents and to perform depositions to contradict the defendant's affidavit and to respond to her motion for summary judgment. The plaintiff claims that those documents, specifically Bedard's medical records and depositions of other witnesses, would demonstrate that the defendant was aware of Bedard's "numerous stints in drug and alcohol rehabilitation" and that the defendant "could have [been] present" at the time of the decedent's death.

As we discuss in part II of this opinion, however, the plaintiff has not demonstrated how mere knowledge of Bedard's drug addiction would have created an issue of material fact with respect to the defendant's duty to the decedent. In addition, the plaintiff made reference in his motion to unnamed witnesses with nothing more

specific than the claim that they were "further witnesses to the events at issue . . . ." In his brief before this court, the plaintiff insinuates that the deposition testimony of those further witnesses would support his contention that the defendant could have been present at the time of the decedent's death. Although the plaintiff did not provide to the court the affidavits required pursuant to Practice Book § 17-47, the court specifically asked how this additional discovery sought by the plaintiff would have any bearing on the issues presented in the defendant's motion for summary judgment.[2] The plaintiff responded, in reference to Bedard's medical records, that they would show the defendant to be "uncredible" with respect to her denial that Bedard consistently abused substances in her home.

As the court emphasized in its memorandum of decision, the plaintiff had already been granted two prior motions for extensions of time. The plaintiff's third motion for an extension of time, which was filed just four days before the rescheduled hearing on the summary judgment motion, requested that the deadline to respond be moved to October 21, 2018, just over two weeks before the jury trial was scheduled to begin on November 6, 2018. After hearing from the parties, the court indicated that it would review the motions and issue its decision. It is in this context that we emphasize that proper affidavits with the required showing of "precisely what facts are within the exclusive knowledge of the [party to be deposed]" are not merely procedural rules. (Internal quotation marks omitted.) *Weissman* v. *Koskoff, Koskoff & Bieder, P.C.*, 136 Conn. App. 557, 559, 46 A.3d 943 (2012). They form the basis on which a court can rely and make an informed determination as to whether the information potentially to be discovered justifies the requested continuance. Moreover, in considering whether the court abused its discretion, we observe that "[m]atters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court." (Internal quotation marks omitted.) *Sowell* v. *DiCara*, 161 Conn. App. 102, 132, 127 A.3d 356, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015). Here, the court had before it the representations of counsel and no affidavits articulating with any specificity what additional discovery might justify a continuance of the hearing on the motion for summary judgment and, potentially, the trial. Given the timing of the third motion for an extension of time and, in the absence of information verified by affidavit detailing "precisely what facts are within the exclusive knowledge of the [party to be deposed]"; (internal quotation marks omitted) *Weissman* v. *Koskoff, Koskoff & Bieder, P.C.*, supra, 559; we cannot conclude that the court abused its discretion in failing to grant the plaintiff's third motion for an extension of time.

II

The plaintiff next claims that the court improperly granted the defendant's motion for summary judgment. Specifically, he argues that the defendant failed to demonstrate, and the court improperly determined, that there "were no material facts in dispute that would give rise to the existence of a legal duty owed by the defendant . . . ." We disagree.

The following legal principles govern our review of this claim. "The standard governing our review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Cyr* v. *VKB, LLC*, 194 Conn. App. 871, 877, 222 A.3d 965 (2019).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . The issue of whether a duty exists is a question of law . . . which is subject to plenary review." (Internal quotation marks omitted.) *Vermont Mutual Ins. Co.* v. *Fern*, 165 Conn. App. 665, 671, 140 A.3d 278 (2016).

"Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. . . . Nevertheless, [t]he issue of whether a defendant owes a duty of care is an appro-

priate matter for summary judgment because the question is one of law." (Citation omitted; internal quotation marks omitted.) *Streifel* v. *Bulkley*, 195 Conn. App. 294, 304, 224 A.3d 539, cert. denied, 335 Conn. 911, 228 A.3d 375 (2020).

"Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . [T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Citations omitted; internal quotation marks omitted.) *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 525–26, 832 A.2d 1180 (2003).

On appeal, the plaintiff claims that the court improperly rendered summary judgment when it determined that there was no dispute as to any material fact. The plaintiff, however, does not specify or discuss which material facts were still in dispute. The first part of the plaintiff's brief, addressing the motion for an extension of time, claims that he needed more time to complete discovery so as to demonstrate that the defendant was aware of Bedard's issues with drugs and alcohol and that she was present at her home when the decedent was there. The plaintiff claims that "[t]he trial court relied on a self-serving affidavit from the defendant . . . which was inconsistent with the deposition testimony of . . . Bedard and neglected to consider the complaint in its entirety." He does not, however, expand on this claim. We note that the defendant submitted an affidavit to the trial court, attached to her memorandum of law in support of her motion for summary judgment, in which she averred that she was not present at her home on February 9, 2016, when the decedent was there and that she did not learn that the decedent had been at her home until the next day. As the nonmoving party, the burden shifted to the plaintiff to dispute this fact. See *Cyr* v. *VKB, LLC*, supra, 194 Conn. App. 877; *Streifel* v. *Bulkley*, supra, 195 Conn. App. 300 ("The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.)). The plaintiff did not present any evidence to the court that the defendant was home when

the decedent was present. As such, the only evidence before the court to consider regarding whether the defendant was home was the defendant's affidavit. The court, therefore, properly determined that no dispute of material fact existed on that issue.

The plaintiff further argues that the court improperly rendered summary judgment because the defendant knew or should have known that Bedard possessed drugs and alcohol in her home and that she failed to take any action to remove them or to protect the decedent when she knew or should have known that they would cause harm to persons, namely, the decedent. The plaintiff asserts that the court failed to consider a number of allegations in his complaint, namely, "that the defendant . . . 'failed to take any action to save the . . . decedent, failed to warn or protect his safety, failed to provide emergency medical personnel with information regarding the decedent's activities, and failed to exercise control over the premises.' "[3] (Emphasis omitted.) We disagree.

The court first analyzed the plaintiff's claims under the general negligence standard. The court explained that "[t]he consequences surrounding [the decedent's] death are too remote to be reasonably foreseeable to the defendant . . . ." Next, the court discussed the public policy considerations relevant to determining whether a duty existed. The court explained that "[there is a] general prohibition against imposing upon an individual a duty to control the conduct of a third party. . . . [Under the policy analysis] there generally is no duty that obligates one party to aid or to protect another. One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or protect another." (Citation omitted; internal quotation marks omitted.) The court thereafter explained that, even "[i]f the court accepts as fact, [the allegation] that Bedard was the 'husband, boyfriend and/or friend' of the defendant," there is no basis for finding that this relationship gives rise to a duty to aid or to protect a third party.

The court subsequently analyzed the plaintiff's claims using a premises liability standard. The court stated that "in order for the plaintiff to succeed on such a theory, he must show that [the defendant] owed [the decedent] a duty to warn [the decedent] of the presence of dangerous and intoxicating drugs on the premises." The court then explained that the revised complaint alleged that the decedent was invited by Bedard to the premises in order to consume drugs and that the decedent's voluntary consumption of drugs, "if it can be proven that [the decedent's] death was the result of drugs consumed on the [defendant's] premises, was the cause of his own death."

The plaintiff alleged that the defendant knew or

should have known that Bedard possessed drugs and alcohol in her home and that she therefore had a duty to aid or to protect the decedent. He did not produce any evidence, in the form of exhibits or counteraffidavits, to support the allegation that the defendant was aware that drugs were in her home. Also, the plaintiff did not present any evidence, beyond mere speculation, to support the contention that the defendant should have known that Bedard possessed drugs and alcohol in her home. Instead, the court was presented with undisputed evidence that the defendant did not invite the decedent to her home, that she did not give permission for Bedard to invite the decedent into her home, and that she was not aware the decedent was in her home until the following day. On the basis of what was presented to the court regarding what the defendant knew or should have known, we cannot conclude that an ordinary person in her position would anticipate that the decedent would ingest drugs in her home and suffer serious physical injuries that would result in his death. See *Sic* v. *Nunan*, 307 Conn. 399, 409, 54 A.3d 553 (2012) ("[W]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand. . . . [D]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable." (Citation omitted; internal quotation marks omitted.)).

As the trial court explained, there is generally no duty to aid or to protect another person in the absence of a special relationship of custody or control between the parties that would warrant the imposition of such a duty. See *Demond* v. *Project Service, LLC*, 331 Conn. 816, 836, 208 A.3d 626 (2019). The plaintiff has not specifically alleged any recognized special relationship between the parties that would warrant the imposition of a duty.

The plaintiff did allege in his complaint that the defendant was the owner of the home where Bedard lived and that she, therefore, owed the decedent a duty of care under the theory of premises liability, in that, as the owner of the house, she had a duty to warn the decedent of the presence of intoxicating substances. "To hold the defendant liable for her personal injuries . . . the plaintiff must prove (1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it." (Internal quotation marks omitted.) *Bisson* v. *Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 628, 195 A.3d 707 (2018). Here, the plaintiff's claim cannot succeed because the alleged "defect" in the premises was another party's conduct, in that Bedard possessed drugs and alcohol and provided them to the decedent. The

plaintiff has not provided any case law to support the contention that a codefendant's possession of drugs and alcohol constitutes a defect on her premises.

On the basis of the foregoing, we conclude that the trial court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also brought this action against Michael J. Bedard. The plaintiff alleged that Bedard was living with Schmoegner at her home when Bedard invited the decedent to Schmoegner's home for the purpose of consuming drugs, which is where the decedent overdosed. Bedard was served with notice of the action on May 2, 2017. After failing to file an appearance, Bedard was defaulted for failure to appear pursuant to Practice Book § 17-20. Because the plaintiff has not filed a motion for judgment, no judgment has been entered as to Bedard, and, as such, the counts against him remain pending in the trial court. For clarity, in this opinion, we refer to Schmoegner as the defendant and to Bedard by name.

Although the action is still pending as to Bedard, this court has the jurisdiction to decide the plaintiff's appeal. Our jurisdiction is limited to appeals taken from final judgments, unless otherwise provided by law. See Practice Book § 61-1. "Our rules of practice . . . set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties; see Practice Book § 61-3 . . . ." (Internal quotation marks omitted.) *Krausman* v. *Liberty Mutual Ins. Co.*, 195 Conn. App. 682, 687–88, 227 A.3d 91 (2020). Because all counts of the complaint pertaining to the defendant have been disposed of, we have jurisdiction to hear the plaintiff's appeal.

[2] As additional grounds for affirming the trial court, the defendant notes that the plaintiff's third motion for an extension of time failed to comply with Practice Book § 17-47, which requires affidavits that show "precisely what facts are within the exclusive knowledge of the [party to be deposed] and what steps [the plaintiff] has taken to attempt to acquire these facts." (Internal quotation marks omitted.) *Weissman* v. *Koskoff, Koskoff & Bieder, P.C.*, 136 Conn. App. 557, 559, 46 A.3d 943 (2012). In response, the plaintiff is dismissive of that claim and suggests this failure is merely procedural. To the contrary, this court recently reaffirmed the principle that a party's failure to comply with the requirements of § 17-47 is "fatal to [the] claim that [a] trial court abused its discretion" in refusing to grant a motion for continuance to accommodate discovery in response to summary judgment motions. (Internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Scroggin*, supra, 194 Conn. App. 861.

[3] The plaintiff alleged in his complaint and now argues on appeal that the defendant failed to aid or to provide emergency medical care to the decedent. First, we reiterate that the defendant submitted an affidavit to the court in which she averred that she was not home when the decedent was present, she did not invite the decedent to her home, she did not give Bedard permission to invite the decedent to her home, she did not know that Bedard had invited the decedent to her home, and she was not aware that the decedent had been at her home on February 9, 2016, until the following day. The plaintiff did not produce any evidence to rebut the assertions in the defendant's affidavit. The plaintiff, therefore, could not succeed on his claims that the defendant failed to provide emergency medical care to the decedent or to take any action to save the decedent's life because the only evidence presented to the court established that she was not present at her home while the decedent was there and, thus, could not have taken any action to aid the decedent.